# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MARK WESLEY BAILEY,
            *Petitioner-Appellant,*

v.

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,
            *Respondent-Appellee.*

No. 03-18

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-02-254-1)

Argued: February 25, 2004

Decided: March 30, 2004

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert Edward Lee, Jr., VIRGINIA CAPITAL REPRE-
SENTATION RESOURCE CENTER, Charlottesville, Virginia, for
Appellant. Katherine P. Baldwin, Senior Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellee. **ON BRIEF:** Jennifer Leigh Givens, VIRGINIA CAPITAL
REPRESENTATION RESOURCE CENTER, Charlottesville, Vir-
ginia, for Appellant. Jerry W. Kilgore, Attorney General of Virginia,
Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. *See* Local Rule 36(c).

---

## OPINION

PER CURIAM:

In the early morning of September 10, 1998, Mark Wesley Bailey brutally murdered his wife, Katherine Bailey, and two-year-old son, Nathan Bailey, by shooting them both repeatedly through the head. *See Bailey* v. *Commonwealth*, 529 S.E.2d 570, 573 (Va. 2000). The murder was premeditated and committed in cold blood. As he later admitted to police, Bailey had, for several months leading up to the murders, fabricated stories that his wife had received threatening calls and notes, and related these stories with feigned concern to his coworkers. *Id.* After committing the murder, Bailey cut the bathroom screen window and the telephone line to the house to give the appearance of a break-in. *Id.* And, later that same morning, Bailey reported to work and attempted to act as if nothing had happened.

For this crime, Bailey was convicted in the Commonwealth of Virginia of two counts of capital murder and one count of murder in the first degree on July 21, 1999. He was sentenced to death three days later. Following an unsuccessful direct appeal of his conviction and sentence to the Virginia Supreme Court, *see generally*, *id.*, Bailey sought relief from his sentence in state post-conviction proceedings. On January 11, 2002, the Virginia Supreme Court, again, denied relief.

Bailey filed a petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254 on August 30, 2002. In his petition, Bailey alleged twelve independent constitutional errors in his conviction and sentence. The district court reviewed each of Bailey's claims, and, finding them to be meritless, dismissed Bailey's petition. Bailey then asked this court to issue a certificate of appealability, as required by 28 U.S.C. § 2253(c), on ten of the claims he raised before the district court. We granted a certificate of appealability on two of the claims.

Having now carefully considered both claims, we affirm the order of the district court, dismissing Bailey's petition for a writ of habeas corpus.

## I.

Bailey first argues that he received ineffective assistance of counsel due to his counsel's failure to adequately develop evidence of his mental illness in mitigation. Bailey concedes, as he must, that his counsel hired an experienced mental health expert, Dr. Evan Nelson, to conduct an investigation into Bailey's life for the purpose of evaluating his mental condition; that counsel provided Dr. Nelson with all the information that he requested for this investigation; that, based on the information provided to him by counsel and his own independent investigation into Bailey's life, Nelson prepared a detailed report, diagnosing Bailey with "Personality Disorder Not Otherwise Specified," *see* J.A. 1295-1305; and that Dr. Nelson testified at length at sentencing about Bailey's mental condition at the time he murdered his wife and son, *see* J.A. 982-1018. Bailey nevertheless argues that his counsel's performance was deficient due to counsel's failure to provide Nelson with additional information — or to conduct a more complete investigation into Bailey's background — in response to statements in Nelson's report that Bailey, "had mild symptoms of Bipolar Disorder (Type II) or Cyclothymia, but there were not sufficient data to meet the formal criteria for these diagnoses." J.A. 1301.[1] Bailey contends that, had his counsel taken either or both of these steps, Dr. Nelson would have diagnosed him with Bipolar Disorder,

---

[1]In a similar vein, Dr. Nelson's report also stated,

Mr. Bailey's history is also highly suggestive of either Bipolar Disorder (Type II) or Cyclothymia. He, family members, and the records suggested periods of depression. The defendant and his mother reported periods of high energy, sleeplessness, and starting projects without finishing them. He also clearly had an alcohol abuse problem, which can be a comorbid condition with a Mood Disorder such as Bipolar Disorder or Cyclothymia. However, *as no definitively hypomanic episodes can be documented at this time one should be cautious about formally diagnosing him with one of these illnesses*.

J.A. 1300 (emphasis added).

and, therefore, that his counsel's failure in this regard deprived the sentencing jury of an accurate diagnosis of his mental illness.

The Supreme Court of Virginia denied relief to Bailey on this claim, reasoning that counsel's performance was not deficient because the information counsel provided to Dr. Nelson was sufficient to allow Nelson to conduct an accurate mental health evaluation. J.A. 1502. The district court agreed, holding that, "[t]rial counsel's efforts in successfully filing a motion for the appointment of a mental health expert, securing pertinent military and medical records, and securing a competent mental health professional," were, "well within the range of competen[ce]," guaranteed by the Sixth Amendment and likewise denied relief. J.A. 1528-29. We affirm.

Before a federal court may grant a writ of habeas corpus to a prisoner in custody "pursuant to the judgment of a State court," it must first determine that the state court's adjudication of the prisoner's claim, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). Because the Virginia Supreme Court applied the proper standard for ineffective assistance of counsel set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), *see* J.A. 1502-03, its decision was not "contrary to . . . clearly established Federal law." *See Williams* v. *Taylor*, 529 U.S. 362, 405 (2000). Thus, we must deny relief to Bailey unless the state supreme court's application of *Strickland* to the facts of this case was "objectively unreasonable." *See Williams*, 529 U.S. at 409. We are confident that it was not.

In fact, "judg[ing] the reasonableness of counsel's challenged conduct on the facts of th[is] particular case, viewed as of the time of counsel's conduct," *see Strickland*, 466 U.S. at 690, we agree with the Virginia Supreme Court that counsel's decision to accept the diagnosis of "Personality Disorder Not Otherwise Specified," reached in Dr. Nelson's report, rather than to undertake additional investigations in an attempt to push Dr. Nelson into a diagnosis of Bipolar Disorder, was well within the bounds of acceptable professional conduct. *See Strickland*, 468 U.S. at 688 ("[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."); *see also Wiggins* v. *Smith*, 123 S. Ct. 2527, 2535 (June 25, 2003) (same). Put simply, counsel had no reason to believe that there

was information, which was yet to be discovered or that Dr. Nelson had yet to review, that would have influenced Nelson's diagnosis of Bailey. *Compare Wiggins*, 123 S. Ct. at 2538 (holding that counsel's decision not to investigate the defendant's background was deficient because the known evidence would have led a reasonable attorney to investigate further).

At the time Dr. Nelson completed his report on Bailey — and counsel made a decision to rely on those findings — counsel had already supplied Nelson with an extensive volume of records about Bailey's life and background, as well as the circumstances of the murders. *See* J.A. 1297 (listing the "sources of information" for Dr. Nelson's report on Bailey's mental condition). This information included Bailey's school records, his Navy medical and performance records, two statements from Bailey himself after the murder, and statements from numerous friends and co-workers of Bailey and his wife. *Id.*; *see also* 1324-33 (Dr. Nelson's summary of the first round of records provided to him by counsel). Moreover, counsel knew, at the time he decided not to pass along more information to Dr. Nelson or to investigate further, that Nelson had supplemented the records counsel had given him with a substantial investigation of his own. Nelson had interviewed Bailey face-to-face for seven to eight hours, conducted telephone interviews with Bailey's twin brother (Michael Bailey), his parents (Myron and Bonnie Bailey), one of his best friends (Irene Shaw), J.A. 1297, and his neighbors, J.A. 987, and given Bailey three psychological tests, assessing his intelligence, personality and mental state, respectively. J.A. 1297.

Thus, far from being unreasoned or uninformed, counsel made a pragmatic, strategic judgment that it would have been a futile exercise to delve even further into Bailey's background in search of additional information to sway Dr. Nelson. Instead, counsel decided to present to the jury the considered, professional opinion of Dr. Nelson that it was "possible" that Bailey had Bipolar Disorder, based on the fact that his twin brother had it and that he was "a moody sort of guy with changeable moods from day to day," J.A. 1011, but that he could not be diagnosed with such because Bailey had suffered no "hypomanic episodes." J.A. 1300. In light of the substantial evidence that Dr. Nelson had already considered in making his diagnosis, and counsel's thorough investigation into Bailey's background, we find this judg-

ment to be reasonable, a conclusion which is underscored by the fact that Bailey has yet to identify any evidence, unknown to counsel at the time that they made this judgment, which even arguably would have affected Nelson's diagnosis of Bailey.[2]

We, therefore, hold that the decision of Bailey's counsel not to take additional action upon receiving Dr. Nelson's report did not constitute ineffective assistance of counsel and affirm the judgment of the district court.

## II.

Bailey also asserts that he received ineffective assistance of counsel due to counsel's failure to inform the jury, or request a jury instruction, that he was being medicated with 900 mg of lithium each day during the trial and sentencing, causing him to appear emotionless before the jury. Bailey argues that this failure caused the jury to be misled into believing that he lacked remorse for the murders he had committed.

The Virginia Supreme Court found this claim to be unsupported by the record. It explained that,

---

[2]Bailey argues that Dr. Nelson "failed to interview or obtain any information from," six witnesses, who would have provided evidence that Bailey suffered "erratic mood swings; that Bailey's behavior paralleled that of his bipolar twin brother; that prior to the crimes Bailey was deteriorating mentally and emotionally, and that Bailey has an extensive family history of mental illness."

As is clear from his report and testimony, however, Dr. Nelson was well aware of each of these facts when he made his diagnosis of Bailey. Nelson testified that Bailey was a "moody sort of guy with changeable moods day to day," and acknowledged in his report that Bailey, "family members, and the records suggested periods of depression." J.A. 1298. Nelson interviewed Bailey's twin brother in preparing his report, J.A. 1297, and stated in his testimony that the fact that his brother had Bipolar Disorder made it more likely that Bailey himself had it, J.A. 1100. Moreover, Nelson rejected Bailey's claim that his family life was normal, writing that, "the family history suggests there were more problems than either he or his family members could identify." J.A. 1298.

> [w]hile the record reflects that Bailey received 900 mg of Lithium daily for a substantial period of time, *it does not show that such dosage was administered on the days of trial or that the medication caused the demeanor about which he complains*. Also, his emotional appearance and lack of remorse are consistent with the personality diagnoses made by the mental health experts. Finally, trial counsel instructed petitioner to refrain from 'any display of emotion,' and at his elocution [sic] he explained that he refrained from showing remorse 'because I have turned over what I did to God.'

J.A. 1504 (emphasis added). This factual finding was fatal to Bailey's claim: if lithium was not the cause of Bailey's emotionless appearance, then his counsel could not be faulted for failing to inform the jury that it was. The state court then held that counsel's instruction to Bailey not to show emotion was a reasonable tactical decision and dismissed Bailey's claim. J.A. 1505.

The district court failed to acknowledge that the state supreme court had rejected the factual basis of Bailey's claim, but, nevertheless, denied relief, holding that "the decision by trial counsel instructing Bailey to refrain from showing any emotion and to continue taking his medication during the trial does not constitute ineffective assistance of counsel as contemplated by *Strickland*." J.A. 1530.

We affirm the judgment of the district court dismissing Bailey's claim, but do so on the basis of the state court's factual finding that the record, "does not show . . . that the medication caused the demeanor about which [Bailey] complains." J.A. 1504 (emphasis added). When a petitioner challenges a state court's factual determinations, we may not grant relief unless we conclude that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d)(2). We must presume that a state court's factual findings are correct, unless the petitioner rebuts those findings by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1).

Bailey argues that the state supreme court's factual determination that lithium did not cause his emotionless appearance was unreasonable, because, contrary to the state court's statement that he did not

receive lithium on either day of his trial, medical records show that he was administered 300 mg of lithium on the morning of July 20, the first day of his three-day trial. This fact alone, however, does not disprove the state court's determination that Bailey's appearance was not caused by lithium, much less show it to be unreasonable. Not only was the 300 mg dosage that Bailey received on July 20 only a third of his typical daily dosage, Bailey's medical records make clear that he refused his regular dose of lithium for the remainder of the trial, on the evening of July 20, and on July 21 and 22. J.A. 1443. Moreover, well before he began receiving lithium, Bailey's manner had been described as cold and emotionless. For instance, Detective Thomas Killilea described Bailey's reaction immediately after the murders as "totally inappropriate for the situation." J.A. 1316. Detective Killilea stated that "he noticed little emotional response [from Bailey] to what would be an emotionally charged situation for most people." *Id*. Finally, as the state court recognized — and Bailey himself conceded — Bailey had been instructed by counsel to remain emotionless at trial, in response to previous exhibitions of inappropriate behavior. J.A. 1504-05.

In light of this evidence, we conclude that it was not unreasonable for the Virginia Supreme Court to determine that Bailey's emotionless appearance at trial was caused, not by Bailey's medication, but instead by his counsel's express instruction to avoid any display of emotion and Bailey's own lack of remorse for his actions. We therefore affirm the district court's denial of relief on this ground as well.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court, dismissing Bailey's petition for a writ of habeas corpus.

*AFFIRMED*